# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-00383-SCT

*KELLY WAYNE JEROME*

*v.*

*ANGELIA CAROL JEROME (STROUD)*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/95 |
| TRIAL JUDGE: | HON. MELVIN MCCLURE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SUSAN M. BREWER |
| ATTORNEY FOR APPELLEE: | KATHLEEN L. CALDWELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 2/20/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/13/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

### I.

¶1. Angelia Carol Jerome Stroud (hereinafter "Angelia") and Kelly Wayne Jerome (hereinafter "Kelly") were married on July 29, 1988. Two children were born of the marriage: Devin Michael Jerome on January 10, 1989, and Casey Morgan Jerome on August 31, 1990. An order of the DeSoto County Chancery Court divorced the parties. They tried the original divorce proceeding before Honorable Percy Lynchard, Jr., as Special Master. The Special Master granted paramount physical custody of the minor children to their father, Kelly. The court awarded Angelia a reasonable visitation, including two months during the summer. It did not order her, however, to pay child support.

¶2. Angelia appealed the custody determination. While the appeal was pending, she also filed a paternity action alleging that Kelly was not the biological father of Casey Jerome. In a separate action, she also petitioned the trial court for a modification of custody.

¶3. On October 7, 1993, this Court, unaware of Angelia's paternity claims, reversed and remanded the case on the issue of child custody in an unpublished opinion. Specifically, the Court held that at the time of the original trial, neither parent was fit for custody. The Court suggested that the trial

court should have considered placing the children with a third party. Being mindful that a significant period of time has passed since the original custody determination, this Court remanded the case to the DeSoto County Chancery Court to determine the custody of Devin and Casey Jerome based upon the present circumstances.

¶4. Upon remand, the case was assigned to Chancellor Melvin McClure, Jr. Although Kelly filed a motion to have the case transferred to Special Master Percy Lynchard, Jr., who had originally tried the case, Chancellor McClure denied Kelly's motion. The parties tried the case on April 20, 21, and 22, 1994. At the conclusion of the proof, Chancellor McClure requested the parties to submit proposed findings of fact and conclusions of law. He then took the case under advisement pending the outcome of the paternity action. However, on May 9, 1994, a motion to dismiss the paternity action was filed by Angelia and said paternity action was voluntarily dismissed without prejudice. The chancellor later entered a 38-page opinion on January 25, 1995, in which he made extensive findings of fact and applied the *Albright* factors to the instant case. Said opinion concluded that it should award primary custody of the minor children to Angelia, with visitation to Kelly, child support to be paid by Kelly in the amount of $330 per month, and each party to pay its attorney's fees, court costs to be divided equally. The chancellor entered a decree of modification on February 21, 1995, and entered it with the court clerk on February 27, 1995. Kelly filed a motion to reconsider or set aside judgment or, in the alternative, a new trial; Angelia filed a response; and, thereafter, the chancellor denied the motion. Aggrieved by the decision of the court below, Kelly filed his notice of appeal to this Court.

## II.

¶5. As we have stated before, absent an abuse of discretion, we will uphold the decision of the chancellor. This Court will not disturb the factual findings of the chancellor unless said factual findings are manifestly wrong or clearly erroneous. *McAdory v. McAdory*, 608 So. 2d 695, 699 (Miss. 1992).

¶6. Where the chancellor properly considers and applies the *Albright* factors, the appellate court cannot say the chancellor is manifestly wrong; such careful consideration and application by the chancellor precludes reversal on appeal. *Smith v. Smith*, 614 So. 2d 394, 397 (Miss. 1993). In his thorough opinion, the chancellor summarized the testimony heard at trial. He also enumerated the *Albright* factors and his findings under each factor. However, the chancellor, in light of this Court's previous decision, determined that Angelia should not be held to a complete application of the *Albright* factors. Rather, he reviewed all the *Albright* factors "in light of the present circumstances. Also, as to the one *Albright* factor of a determination of the parent that has had the continuity of care prior to the separation, since the Supreme Court reversed the original custody determination, any continuity of care from the original custody determination until the remand" was not considered.

¶7. We must now note that the chancellor and parties throughout seemed to rely too literally upon this Court's choice of words and less on the requirements of *Albright*. This Court remanded for a determination of custody on the "present circumstances" because it feared that neither parent was fit. However, it did not intend its opinion to read as a mandate to disregard occurrences or circumstances which were prior to retrial, nor was it a mandate to award the mother with custody. Regardless, this Court must now review the *Albright* factors as applied to determine if the chancellor abused his

discretion in applying such factors.

¶8. Suffice it to say that continuity of the children's care was not considered. Relying upon the "mandate" of this Court the chancellor did not consider it, but stated that there was no difference. This is manifestly erroneous. The prior opinion of this Court was not meant as a directive to look at the *Albright* factors in a vacuum of the present day and time ignoring the important past of these parents and their relationships to the children. The present circumstance of this factor is that Kelly has had the boys continuously. In *Law v. Page*, 618 So. 2d 96 (Miss. 1993), an analogous case, this Court awarded custody to the father of the children. One factor that was considered was that the children had been with their father for three years. *Id.* at 102. It did not want to uproot the children from their stable environment. This factor would weigh in favor of Kelly.

¶9. Both Kelly and Angelia are eager and willing to care for their children and the chancellor recognized this fact. Also, they both have the assistance of their extended families in order to care for the children. Kelly and his present wife, Michelle, currently work from approximately three in the afternoon to eleven o'clock at night. A normal routine is for the boys, Kelly and Michelle to get up, eat breakfast and play all day. When it is time for Kelly and Michelle to go to work, they take the children over to Kelly's parents' home. This is where they stay until approximately eight o'clock in the evening when they are taken back to Kelly's and put to bed. Kelly's stepfather, Yogi, stays there until either Michelle or Kelly gets home. Michelle is usually home first because Kelly sometimes must work until one o'clock in the morning. Both Kelly and Michelle testified that if they got custody, they would attempt to obtain the day shift in order to be with the boys after school and at night. Michelle has been at her job so long, it is probably not going to be a problem. Kelly also felt like he could get a better shift.

¶10. Michelle works at LeBonheur Children's Hospital in the emergency room registering patients and preparing their charts. She also translates between doctors and Spanish-speaking patients and parents of patients on a temporary, as-needed basis at St. Jude's Hospital in the pediatric unit. Kelly works at Fleming Foods as an order selector.

¶11. The chancellor looked to the fact that Kelly had four jobs in two months prior to his present job. However, he testified that it was due to his failing marriage, never knowing where Angelia or the children were. He quit school to marry Angelia because she was pregnant and he wanted to be responsible and take care of her and the children. This does show responsibility on Kelly's part, even though he did have numerous jobs in a short period of time.

¶12. Angelia is not currently employed, but was after the final decree of divorce, although it was sporadic. She was employed with several contract agencies throughout Memphis, and Methodist Hospitals of Memphis as a nurse. She plans to return to work when the children go to school. Angelia's husband, Damon, is a claims specialists with State Farm Insurance.

¶13. In reviewing these factors, the chancellor found that Kelly did have the capacity, with the help of his parents, to provide for the children. The court stated, "however, his employment and his wife Michelle's employment and school make it difficult for them to provide this primary child care." The court then weighed this factor in favor of Angelia.

¶14. The chancellor determined that there were no differences in the next three factors: (1) parent's

physical health; (2) mental health; and (3) age. The emotional ties of the parent and the children is the next factor to consider. As the testimony showed, the chancellor found that both parents have close emotional ties to both children. The chancellor further stated that "[a]s to the children's emotional ties to the parents, obviously since they have been with their Father for the last three years the ties should be stronger there. However, in view of the Supreme Court's mandate, this should not be an advantage to the Father." The chancellor misunderstood this Court's opinion. It was not this Court's intention to ignore factors that might require reviewing the past circumstances. The chancellor found there to be no difference between Kelly and Angelia for this factor. This is manifestly erroneous, as he clearly states that this factor **should** weigh in favor of Kelly, but was not so weighed or applied.

¶15. Moral fitness of each parent is an important factor to consider. The chancellor correctly found that this factor weighs in favor of Kelly. Angelia admitted that she had a bad past and made some terrible mistakes. She had filed a paternity suit alleging that Kelly is not Casey's dad although she testified at the first trial that she never committed adultery.[1] There was testimony that she told Casey that Kelly wasn't his dad (at the time Casey was three years old). However, she denied telling Casey this although she admitted that she had a picture of his biological dad in his baby book and allowed Casey to look at it. As to moral fitness, the chancellor found that:

> If the Court looked to the entire marital relationship as in the regular original custody determination, this factor would weigh very heavily against the [Angelia]. It is clear that marital fault in and of itself should not be used as a sanction in custody awards. Also in light of the Supreme Court mandate this should only be evaluated in light of the present circumstances. Morality is not limited to a single point in time; immorality tends to repeat itself. [Angelia], however, seems since her latest marriage to have changed for the better. This has no more weight than the other factors, however, this factor is in favor of [Kelly].

The chancellor was wrong not to fully consider the circumstances in that this Court did not intend to limit or restrict the chancellor in his renewed consideration of child custody.

¶16. The chancellor correctly found no difference between either parent concerning the home record of the children, the school record of the children, or the community record of the children. The preference of the child at the age sufficient to express a preference by law is not applicable in the present case.

¶17. As to the stability of each parent's home environment and the employment of each parent, the chancellor held:

> Each of the parents appear to be entering a period in their life when their home environment will be more stable than it had been in the past. As to the stability of their employment, both parties have a bad track record on this, but hopefully this too will improve. Therefore, the Court considers there to be no difference between the parents in regard to this factor.

¶18. The chancellor did not consider difference in religion in his determination. However, he did admonish the parents to take the children to church, no matter which one, just as long as the children were being taken to a church. Finally, the chancellor determined that the totality of the circumstances found the best interest and welfare of Devin and Casey to be with their mother.

¶19. The chancellor was manifestly in error because he failed to determine custody under all the facts and circumstances and limited his review to a constricted present circumstances. The fact that Kelly has had the children for three years should have weighed in favor of Kelly. The chancellor was inconsistent when he found that Kelly and Michelle were capable of caring for Devin and Casey with his parents' help, but weighed the factor in favor of Angelia. Finally, the moral fitness of Angelia should have been considered by the chancellor even though the events were from the past and not present circumstances.

### III.

¶20. The lower court erred in restricting and limiting its custody determination even though it was the chancellor's understanding and interpretation off our prior ruling. The lower court also erred in failing to review the circumstances relevant to the best interest of the children. In the previous opinion, this Court intended for the lower court to reconsider proof touching on custody. This Court did not intend to limit the lower court upon review of all factors set forth in *Albright*. In possibly a cumbersome fashion, this Court was seeking the children's best interest. The chancellor could not ignore the past actions of the parties involved. Therefore, the chancellor improperly applied the *Albright* factors when he refused to consider the continuity of custody, and the moral fitness of Angelia. The decision of the chancellor is reversed and remanded for actions not inconsistent with this Court's opinion.

**¶21. REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**LEE, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. PRATHER, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

### PRATHER, PRESIDING JUSTICE, SPECIALLY CONCURRING:

¶22. I agree with the majority that the father's continuous custody of the minor children in this case should have been considered, and the failure to do so constitutes reversible error. *See Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). I write separately only to express my concern that the majority opinion implies that granting custody to the mother was improper. There were numerous facts in the record to support the chancellor's conclusion, including evidence that the children's medical, educational, and spiritual needs would be better met if their mother were granted custody.

¶23. On remand, the chancellor should consider all the *Albright* factors, including the fact that the father has had continuous custody of the boys for several years. However, these factors are not a mathematical formula, and none should be given more weight than the other. *Id. See Buchanan v. Buchanan*, 587 So. 2d 892, 898 (Miss. 1991). The preeminent consideration of the chancellor on

remand should be the best interest of the children. Therefore, the majority opinion of this Court should not be interpreted to favor either parent. Rather, the chancellor should consider the totality of the circumstances and exercise his discretion to the benefit of the children.

**BANKS, J., JOINS THIS OPINION.**

1. The chancellor did not consider this in his decision in any way because it had been dismissed without prejudice. He did note that should Angelia pursue the matter, the court would consider that a material change in circumstances adverse to both children's best interest that would warrant a review of the custody determination then. The court must not act in such a way as to penalize appropriate submission of issues for judicial determination.