763 So.2d 890 (2000)
Daria Jean Lawrence CASWELL, Appellant,
v.
Leonard Bowers CASWELL, Appellee.
No. 1998-CA-01831-COA.
Court of Appeals of Mississippi.
February 15, 2000.
Rehearing Denied May 2, 2000.
Certiorari Denied August 10, 2000.
*891 Jack R. Jones, III, Southhaven, Attorney for Appellant.
Leslie B. Shumake, Jr., Olive Branch, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Daria Jean Caswell appeals a divorce judgment of the DeSoto County Chancery Court, raising four assignments of error
I. ERRED IN ALLOWING INTO EVIDENCE A LETTER FROM A *892 MEDICAL DOCTOR WHICH PRECLUDED THE APPELLANT'S COUNSEL FROM CROSS-EXAMINING THE CONTENTS OF THE LETTER.
II. THAT THE TRIAL COURT'S RULING WHICH GAVE PHYSICAL CUSTODY OF THE SUBJECT MINOR CHILDREN TO THE APPELLEE WAS AN ABUSE OF DISCRETION.
III. THAT THE TRIAL COURT ERRED IN AWARDING THE HOME OF THE PARTIES TO THE APPELLEE AND THIS FACT FURTHER REFLECTS ON THE ERRONEOUS DECISION.
IV. THAT THE TRIAL COURT ERRED IN EQUALLY DIVIDING THE APPELLANT'S PENSION PLAN (401K) WITH THE APPELLEE.

FACTS
¶ 2. Daria Jean Caswell and Leonard Bowers Caswell were married on July 20, 1984. Shortly after they were married they bought the marital home which has approximately $35,000 in equity. The two children born of the marriage, Megan Kathleen Caswell on January 20, 1992, and Daria Lynn Caswell on August 9, 1988, have lived in the marital home all their lives. During the marriage Leonard was injured while working at FedEx. He injured his neck and has had three surgeries, requiring him to take pain killers, arthritis pills and nerve pills. He was determined to be 100 percent disabled and consequently receives $527 and $77 per child a month in Social Security. After his injury Leonard stayed at home and took care of the children and the household. Daria has worked for Host Marriott Services Corporation for over twelve years. She manages thirty to forty people, leaving for work at six in the morning and frequently working until five or six in the evening.
¶ 3. Daria filed a petition for divorce on the grounds of irreconcilable differences on September 26, 1997. An order of the DeSoto County Chancery Court granted the divorce on the stated grounds. The divorce proceeding was tried before Honorable Percy Lynchard, Jr. The chancellor granted primary physical custody of the minor children to their father, Leonard, awarded Daria reasonable visitation and ordered Daria to pay $162 per month in child support, gave Leonard the exclusive use and occupancy of the marital home, and finally, gave Leonard half of Daria's retirement accumulated through the date of separation.

ANALYSIS

I. THAT THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE A LETTER FROM A MEDICAL DOCTOR WHICH PRECLUDED THE APPELLANT'S COUNSEL FROM CROSS-EXAMINING THE CONTENTS OF THE LETTER.
¶ 4. The appellee introduced a letter from a doctor pertaining to the medical condition of the appellee. The appellee was attempting to show that his disability had no effect on his ability to care for his children. The chancellor admitted the letter under the statements for the purpose of medical diagnosis exception to the hearsay rule. M.R.E. 803(4). This letter, however, does not fall under this exception since it did not pertain to a diagnosis and was drafted specifically for litigation. The letter was clearly hearsay and was therefore inadmissible. The appellee's injury occurred during the marriage and prevented him from working; however, the record reflects that he was able to stay at home and care for the children because the appellant worked. This fact, together with testimony in the record, makes it apparent that although the appellee was injured his disability did not prevent him from adequately being able to care for his children. Although *893 admitting the letter into evidence was error, the same was harmless given other testimony and evidence at trial.

II. THAT THE TRIAL COURT'S RULING WHICH GAVE PHYSICAL CUSTODY OF THE SUBJECT MINOR CHILDREN TO THE APPELLEE WAS AN ABUSE OF DISCRETION.
¶ 5. Unfortunately, our review of child custody matters is constrained by a deferential standard. Absent an abuse of discretion or a manifestly wrong or clearly erroneous finding our hands are tied, and we must uphold the decision of the chancellor. Ayers v. Ayers, 734 So.2d 213, 215 (Miss.App.1999). If substantial evidence exists to support the chancellor's finding of fact, broad discretion is afforded his determination. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994).
¶ 6. Daria argues that the chancellor erred in analyzing the best interest of the child test found in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In Albright, the Supreme Court reaffirmed "the rule that the polestar consideration in child custody cases is the best interest and welfare of the child." Id. The Supreme Court has instructed chancellors, when making custody decisions, to consider the age of the child, the health and sex of the child, the continuity of care prior to the separation, parenting skills and willingness to provide primary child care, employment and responsibilities of employment, physical and mental health and age of the parents, emotional ties of parent and child, moral fitness of parents, the home, school and community record of the child, the preference of the child, stability of the home environment and employment of each parent, and other factors relevant to the parent-child relationship. Id. One individual factor should not carry any greater weight than the others. Id.
¶ 7. Daria maintains that she was favored over Leonard in several of the factors due to his faults, whereas Leonard was favored in several factors only because of Daria's recent hospitalization, and not due to any negative factor on her part. Daria also contends that earning money to support and provide for the children affords stability and should fall in her favor. Furthermore, Daria maintains that the chancellor focused too much attention on the seven months between the separation and the trial. This was the short period of time where she was unable to care for the children due to her accident, thus requiring Leonard to care for them. Prior to the accident, which was not her fault, Daria maintains she was the primary care giver of the children as well as the primary financial support for them. She argues that the whole span of their lives should be considered in regards to continuity and stability, instead of a mere seven months.
¶ 8. The court in Jerome v. Stroud discussed that the time between the separation and the trial should be considered in determining continuity for the children. Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997). However, this does not change the Albright factors, which includes looking to continuity of care prior to the separation. Id. Thus, both of these factors need to be considered, giving neither factor greater weight. It appears from the record that the chancellor considered both of these time spans. Regardless of what we would have held if we were the deciding judge, so long as the chancellor had a factual basis to ground his opinion and applied the correct legal standard we are not at liberty to intervene.
¶ 9. It appears from the chancellor's finding of fact that he examined each of the Albright factors and basically found the parents to be equal with the exception of moral fitness which fell in favor of the natural mother and the fact that the children had been with the father for the past seven months. The chancellor went on to state:
The twelfth factor is a catchall factor, which is other factors relevant to the parent/child relationship. As I stated *894 earlier, the last seven months have been extremely traumatic not only for the children, of course, but also for the natural mother as well as the natural father. The children need a sense of continuity. The children need a sense of stability. And the Court has to look at any factor or any other factors which would ensure that.
Over the past few months, the children, as I just stated, have gone through the separation of the parties and the split-up of their parents from the home. Fortunately, they have been allowed to remain in the home, and both parents are to be commended for at least allowing that to happen. However, add to that the trauma of the automobile accident and the extensive hospitalization of their mother, which obviously has had, by all evidence, a traumatic effect on the children, and they need nothing more at this point in time to break up the routine which they have had before. That factor, because of thatbecause the stabilization of the home has been with the natural father over the last few months, that factor favors him.
In applying all of those factors together and looking to the best interest of the children only, it is sad that one party has to win custody and one party has to loose custody in order for the best interest of the children to be determined. But such is the case, and I have to make that call.
Applying all those factors together, the Court finds that the best interest of the children will be served by allowing them to remain in the situation to which they are now in, remain in the home of the parties, and allow them to be in the actual physical custody of the natural father subject to any and all reasonable rights of visitation at any and all times and places which the natural mother may enjoy but no less than those set forth in the standard Farese Visitation Schedule.
¶ 10. Finding that the chancellor considered and applied the Albright factors, we cannot second guess his decision or say he was manifestly wrong in finding that the Caswells' children's best interests would be served by being placed in their father's custody. The record reflects that Leonard loved his children and cared for each child as best he could. This is not to say that Daria was any less of a parent; on the contrary, it appears from the record that she was an exceptional parent who cared for the emotional, moral, educational and spiritual well-being of her children. Ironically it appears as though Daria is being punished for being a hard worker and providing for her family. However, in the end, we are left to our standard of review and with that we are constrained by the chancellor's ruling as he was not manifestly in error.

III. THAT THE TRIAL COURT ERRED IN AWARDING THE HOME OF THE PARTIES TO THE APPELLEE AND THIS FACT FURTHER REFLECTS ON THE ERRONEOUS DECISION.
¶ 11. As previously stated our deferential standard of review requires us to affirm if substantial evidence exists to support the chancellor's finding of fact because broad discretion is afforded his determination. McEwen, 631 So.2d at 823.
¶ 12. Daria maintains that awarding the use and possession of the marital home to Leonard in order to maintain stability for the children was erroneous because Leonard cannot afford to pay the mortgage and maintenance on the home as well as provide for the children. Daria contends that in awarding the home to Leonard the chancellor's goal of maintaining a sense of stability for the children would not be achieved and the home would have to be sold anyway. However, in looking at the gross income of Daria versus Leonard, it appears that Daria earns only approximately $100 more than Leonard. This refutes her own argument that she would *895 better be able to maintain the home for the children's stability.
¶ 13. The use and possession of the marital home was granted to the father in light of his custody of the children in order to maintain a level of stability and continuity in their lives since they have lived there all of their lives. The chancellor gave Leonard the use and possession of the marital home while the children are in his custody and until the children reach the age of majority or are otherwise emancipated. Leonard is to pay the mortgage and if the house is sold the proceeds are to be equally divided. This was another discretionary finding and, particularly in view of the fact Leonard was given custody of the children, we cannot say the chancellor abused his discretion.

IV. THAT THE TRIAL COURT ERRED IN EQUALLY DIVIDING THE APPELLANT'S PENSION PLAN (401K) WITH THE APPELLEE.
¶ 14. Mississippi applies the doctrine of equitable distribution when deciding issues of marital assets. Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss. 1994). Marital property is defined as "any and all property acquired or accumulated during the marriage." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). The chancellor is authorized to make an equitable distribution of all jointly acquired real and personal property. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). In making such a division, the chancellor is not required to divide the property equally. Love v. Love, 687 So.2d 1229, 1231-32 (Miss.1997); Trovato v. Trovato, 649 So.2d 815, 817-18 (Miss.1995). Fairness is the "prevailing guide" in dividing marital property. Ferguson, 639 So.2d at 929. This Court will not disturb the chancellor's findings unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was employed. Watson v. Watson, 724 So.2d 350, 353 (Miss.1998); Magee v. Magee, 661 So.2d 1117, 1122 (Miss. 1995).
¶ 15. The chancellor analyzed the fair distribution of the retirement fund and stated,
It appears that the 401K funds were acquired solely during the existence of the marriage; and although they were financially attributed only by the wife, pursuant to Hemsley, in-kind contributions such as assisting in the home, as the evidence shows the natural father in fact did, entitles him to an equitable distribution. And under Hemsley, it would appear that in-kind contributions are equal in value to that of financial contributions. And accordingly, both parties are entitled to one half of the proceeds or one half of all retirement funds held in the 401K.
¶ 16. In reviewing equitable distribution of property acquired during a marriage, actual contribution toward the property as well as contribution in kind is to be taken into consideration. In such situations, where one party to the relationship performs work or services generally regarded as domestic in nature, these are nevertheless considered economic contributions. Pickens v. Pickens, 490 So.2d 872, 876 (Miss.1986). The record reflects that Daria was the primary "bread winner" in the household and also contributed through household chores. Thus, Daria appears to have contributed financially toward the 401K as well as doing her fair share to maintain the house and care for the children. A fair distribution may appear to warrant awarding Daria more than half of her own retirement, and were we sitting as chancellor we might not have awarded Leonard half of the retirement. However, once again we are constrained because of deferential review to affirm the chancellor's order.
¶ 17. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*896 McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, and MOORE, JJ., concur. PAYNE, J., concurring in part and dissenting in part with separate opinion joined by KING, P.J.
PAYNE, J., concurring in part, dissenting in part:
¶ 18. I write separately because I respectfully disagree with the majority's disposition of the custody issue in the case sub judice. While our chancellors are granted the broadest discretion in such matters, it is not absolute and sometimes the best intentions of the chancery judge result in an abuse of discretion and a clearly erroneous application of the law. I find this to be true in this case.
¶ 19. The chancellor applied the Albright factors, as he was required to do. However, his focus on the seven months of Daria's illness resulting from a terrible car crash in assessing the continuity of care factor and the stability of the home environment factor amounted to a clearly erroneous application of our precedents, particularly the Jerome v. Stroud, 689 So.2d 755 (Miss.1997) decision.
¶ 20. Albright requires as one consideration in the chancellor's custody decision the continuity of care of the children prior to the separation. Stroud modified this rule to allow for consideration of continuity of care of the children since the separation of the parties. Stroud is not a general pronouncement of the continuity of care factor set forth in Albright. Rather, it seems that Justice Pittman specifically limited Stroud, holding that continuity of care since the separation of the parties does not receive more weight than the continuity of care prior to the separation. Stroud was reversed because of the chancellor's "constricted" reliance on parental circumstances at the time of the hearing. While Stroud is precedential, I believe it to be narrow and certainly not dispositive of the continuity of care factor as the chancellor apparently concluded.
¶ 21. Furthermore, in addition to relying on the seven months of Daria's illness to assess the continuity of care factor, the chancellor also relied on this same period of convalescence in assessing the stability of the home environment factor. While the chancellor says in his ruling that Daria's illness did not weigh against her in the custody determination, it seems obvious that it did. Neither Albright nor Stroud contemplates this happening.
KING, P.J., joins this separate written opinion.