906 So.2d 39 (2004)
Ricky C. SANDLIN, Appellant/Cross-Appellee,
v.
Sandra Denise SANDLIN, Appellee/Cross-Appellant.
No. 2003-CA-00371-COA.
Court of Appeals of Mississippi.
November 30, 2004.
*40 J. Dudley Williams, Aberdeen, attorney for appellant.
Tina Marie Dugard Scott, attorney for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Ricky C. Sandlin filed a complaint in the Chickasaw County Chancery Court by which he sought a divorce from Sandra Denise Sandlin on the ground of adultery or, in the alternative, irreconcilable differences. Ricky also requested permanent custody of Rikkita Caron Sandlin and Corey Lee Austin Sandlin. Finally, Ricky asked for child support, possession of the marital home, equitable division of the marital assets and debts, and attorney's fees and costs. Sandra then filed an answer and "counter-complaint"[1] seeking divorce on the ground of habitual, cruel and inhuman treatment or, in the alternative, irreconcilable differences, custody of Rikkita and Corey, child support, equitable division of the marital assets and debts, and attorney's fees and costs.
¶ 2. Ricky and Sandra could not agree on terms for an irreconcilable differences divorce. So, after considering the fault based grounds advanced by each party, the chancellor granted Ricky's request for divorce from Sandra on the ground of adultery and awarded him custody of Corey but gave Sandra custody of Rikkita and possession of the marital home.
¶ 3. Aggrieved by the chancellor's decision, Ricky appeals and raises the following issues:
I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN AWARDING SANDRA CUSTODY OF RIKKITA?
II. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN AWARDING SANDRA POSSESSION OF THE MARITAL HOME?
¶ 4. Also aggrieved, Sandra cross-appeals and raises the following issue:
III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN *41 FAILING TO AWARD SANDRA ALIMONY?

FACTS
¶ 5. Ricky and Sandra were married on October 24, 1980. During the marriage, they had three children, namely, Katherine, who is emancipated, Rikkita, and Corey. Their marriage began to deteriorate in the fall of 2001, and they ultimately separated in January of 2002, when Ricky moved out the marital home. Shortly afterwards, Ricky filed a complaint for divorce and a motion for temporary relief in the Chickasaw County Chancery Court. On May 22, 2002, the chancellor entered an order granting, inter alia, Ricky temporary custody of Rikkita and Corey. Corey lived with Ricky from the time of separation. Rikkita, however, refused to live with Ricky, and Sandra did not require her to do so in violation of the chancery court's order.
¶ 6. In October of 2002, the matter proceeded to trial. Subsequently, the chancellor ruled that Ricky was entitled to a divorce on the ground of adultery. The chancellor further decided that (a) custody of the children would be split, meaning Ricky received custody of Corey but Sandra got custody of Rikkita; (b) Sandra received possession of the marital home; and (c) neither party would receive alimony.

LAW AND ANALYSIS
¶ 7. As often noted in Mississippi jurisprudence, appellate courts "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Kilpatrick v. Kilpatrick, 732 So.2d 876, 880(¶ 13) (Miss.1999) (citations omitted).

I.

Custody
¶ 8. When determining whom should be awarded custody of Rikkita and Corey, the chancellor appropriately evaluated the facts presented at trial in conjunction with the factors enunciated in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), for ascertaining the best interest of the children. The chancellor's findings of fact and conclusions of law were accordingly entered in the judgment of the court.[2] Specifically, the chancellor found that: (a) the age of Rikkita and Corey, fifteen and twelve, respectively, favored neither parent; (b) the health and sex of Corey favored Ricky, considering the need for a strong father figure to act as a role model, but the health and sex of Rikkita favored Sandra, considering the need for her mother's guidance and advice; (c) continuity of care for the children favored Sandra based on her role prior to separation; (d) parenting skills were essentially equal and favored neither parent; (e) both parents were willing and able to provide primary care for the children; (f) employment responsibilities favored Sandra because Ricky's were more restrictive; (g) both parents were in good mental and physical health; (h) emotional ties were split, as Corey favored Ricky and Rikkita favored Sandra; (i) moral fitness favored Ricky, though neither parent was unfit to have custody of the children; (j) the home, school, and community records of the children *42 were good; however, both children exhibited the consequences of their parents' breakup in their behavior; (k) Corey preferred to live with Ricky, and Rikkita preferred to live with Sandra; (l) both parents could provide a stable home and had stable employment; and (m) the families of both parents offered a strong support system to help rear the children. The chancellor concluded that both Ricky and Sandra were fit and proper persons to have custody of the children, and therefore, upon considering the totality of the circumstances, He placed Corey in Ricky's custody and Rikkita in Sandra's custody.
¶ 9. In his first assignment of error, Ricky contends that the chancellor misapplied the Albright factors, and as a result, Sandra was erroneously awarded custody of Rikkita. Ricky maintains that the judgment of the court is clearly contrary to Rikkita's best interest, as demonstrated by the evidence presented at trial, i.e., a dramatic change in Rikkita's appearance, behavior, and friends; an absence of supervision and guidance by Sandra; and Sandra's flagrant adulterous relationship.
¶ 10. Ricky, however, fails to cite any authority to support his argument. According to the Mississippi Rules of Appellate Procedure, arguments advanced on appeal are required to "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(6) (emphasis added). Consequently, this issue is procedurally barred. See Read v. Southern Pine Elec. Power Ass'n, 515 So.2d 916, 920 (Miss.1987).
¶ 11. Ricky's argument also fails on the merits. As previously mentioned, the record demonstrates that the chancellor's decision is supported by substantial evidence so that we could not possibly find his judgment to constitute manifest error. Regardless of what we would have held if we were the deciding judge, so long as the chancellor had a factual basis to ground his opinion and applied the correct legal standard we are not at liberty to intervene. Caswell v. Caswell, 763 So.2d 890, 893(¶ 8) (Miss.Ct.App.2000). Accordingly, this issue has no merit.

II.

Marital Home
¶ 12. The doctrine of equitable distribution necessitates, as the chancellor did in the case at bar, considering a variety of factors as set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). In evaluating these factors, the chancellor found that equity demanded awarding Sandra the house, noting that Sandra "maintained the marital home" and that "Sandra is more emotionally attached to the marital home and property since it is near the homes of other family members and was once her grandparents' property and was given to the parties by her father."
¶ 13. Ricky contends the chancellor's decision to award Sandra the marital home is an affront to basic principles of equity arguing that the aforementioned factors favoring such decision are offset by Sandra's admission of adultery. Sandra's adulterous relationship was detrimental to the stability and harmony of the their marriage and, ultimately, caused the divorce.
¶ 14. "[I]n making an equitable division of the marital property, the chancellor is not required to divide the property equally." Love v. Love, 687 So.2d 1229, 1232 (Miss.1997) (citations omitted). Regardless, our review of the record reveals that the chancellor did not fail to do so. Although Sandra was awarded the marital home, she was also ordered to pay any *43 indebtedness consistent with such ownership. Furthermore, any inequity possibly suffered by Ricky is clearly offset by the fact that he was awarded sole possession of his retirement benefits in addition to not being required to make alimony payments. As a result, we cannot hold the chancellor's judgment to be manifest error and, accordingly, find this issue to have no merit.

III.

Alimony
¶ 15. Sandra contends the chancellor erred in his division of the marital property because she was left with a deficit. Moreover, Ricky's income and earning capacity is almost three times that of Sandra's, so she claims that she should have been awarded alimony.
¶ 16. "Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit." Lauro v. Lauro, 847 So.2d 843, 848(¶ 13) (Miss.2003). However, a deficit alone is an inadequate basis on which to award alimony. The Mississippi Supreme Court has expressed that "adultery should not stand as an absolute bar to alimony, especially ... when denial of alimony would render the wife destitute." Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992). The denial of alimony in the case sub judice certainly does not leave Sandra destitute, and the evidence supports the chancellor's judgment. Therefore, we find that this issue also lacks merit.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED ON APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Rule 81(f) of the Mississippi Rules of Civil Procedure governs the proper terms for pleadings. Accordingly, "counter-complaint" is an improper title for the pleading and should be properly titled as a "counterclaim."
[2] In this case, Chancellor James Gore's findings of fact and conclusions of law could be considered a model reference. Chancellor Gore adequately set forth his reasoning in a manner that greatly aided this Court's resolution of all issues advanced in this appeal and prove positive that good findings make it easy to determine a judge's reasoning and motivations.