GRIFFIS, J., for the Court.
¶ 1. This appeal arises from a judgment of the Chancery Court of Harrison County, awarding an irreconcilable differences divorce to Herman Bellais and Renee Bellais and the physical and legal custody of the couple’s two minor children to. Herman. Feeling aggrieved by the chancellor’s ruling, Renee appeals and asserts a litany of issues, which we summarize as follows: (1) whether, in analyzing the Albright factors, the chancellor erred in his grant of custody to Herman and (2) whether the presiding chancellor and the other chancellors of the Eight District Chancery Court should have recused themselves from hearing the case. We find no error and affirm.
FACTS
¶ 2. Herman and Renee were married on May 23, 1998. Two girls were born to the couple during the marriage. The oldest, Caitlin, was born June 9, 1999, and the youngest, Laini, was born August 30, 2000. The Bellaises separated in May 2001.
¶ 3. On August 2, 2001, the Bellaises filed a joint complaint for divorce on the ground of irreconcilable differences. Thereafter, Herman retained counsel and filed a withdrawal of consent to the grant of divorce on the basis of irreconcilable differences, a withdrawal of and objection to the custody and property settlement agreement, and an amended complaint for divorce. Herman sought a divorce on the fault grounds of habitual cruel and inhuman treatment and adultery. He also alleged the alternative ground of irreconcilable differences. He sought the primary legal and physical custody of Caitlin and Laini. He also filed a motion for temporary relief, seeking temporary custody of the minor children.
¶ 4. Shortly after filing for temporary relief, Herman filed a motion for emergency relief, alleging that “the children were in dire and necessitous need due to the conduct of Renee.” Specifically, Herman accused Renee of “suspected drug use and potential dealings, living in conditions not conducive to the well being of the children, and [committing] illegal and/or immoral acts while the children [were] present.” At the hearing on the motion for emergency relief, the chancellor ordered urine and hair follicle testing for both parties. Pending the completion of the drug tests and reports to the court, Herman was given temporary custody of the children.
¶ 5. Renee filed her answer and counter-complaint for divorce, seeking a divorce on the ground of habitual cruel and inhuman treatment, and the physical and legal custody of Caitlin and Laini. She also asked *667 for a divorce on the alternative ground of irreconcilable differences.
¶ 6. After receiving the results of the drug tests, the chancellor granted Herman’s motion for emergency relief.[1] Thereafter, the chancellor entered another temporary order, granting Herman and Renee joint legal custody of the children, but awarding Herman the physical care, custody and control of the children. The order further provided that Renee would have visitation only if the visitation was supervised by her mother.
¶ 7. Ultimately, a trial on the merits was held. At the beginning of the trial, the parties agreed to a divorce on the ground of irreconcilable differences. The parties executed and filed a withdrawal of fault grounds, and consented to allow the court to adjudicate the following: (1) child custody, (2) child support, (3) visitation, (4) medical insurance and health expenses for the minor children, (5) tax exemptions for the minor children, and (6) personal property of the minor children. At the conclusion of the trial, the court awarded physical and legal custody of the minor children to Herman. From that adverse ruling, Renee appeals.
¶ 8. Additional facts, as necessary, will be related during our discussion of the issues.
STANDARD OF REVIEW
¶ 9. In domestic relations cases, the scope of review is limited by the substantial evidence/manifest error rule. Samples v. Davis, 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002)). “[We] will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id. (citing Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996)). “However, where the chancellor improperly' considers and applies the Al-bright factors, an appellate court is obliged to find the chancellor in error.” Hollon v. Hollon, 784 So.2d 943, 946(¶11) (Miss.2001) (citing Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997)).
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Child Custody

¶ 10. “The polestar consideration in child custody cases is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The Albright factors are the well-established benchmarks used in analyzing what is in the “best interest” of a child in regards to custody. The Albright factors are as follows: (1) age, health and sex of the child; (2) determination of the parent that had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of parents; (8) the home, school and community record-of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Id.
*668 ¶ 11. In Lee v. Lee, 798 So.2d 1284, 1288(¶ 15) (Miss.2001), the supreme court held that, “[w]hile the Albright factors are extremely helpful in navigating what is usually a labyrinth of interests and emotions, 'they are certainly not the equivalent of a mathematical formula. Determining custody of a child is not an exact science.” The court correctly reasoned that “it is the chancellor’s duty to weigh the evidence, and he is in a better position th[a]n this Court to judge the veracity of witnesses and credibility of evidence. In reviewing the record, this Court finds that the chancellor was more than justified in ruling as he did.” Id. at 1291(1129).
¶ 12. With this standard in mind, we review the evidence presented at trial and discussed by the chancellor, under each factor, to ensure that the record supports the chancellor’s ruling.

(a)Age, Health and Sex

¶ 13. Although the Mississippi Supreme Court has weakened the “tender years” doctrine in recent years, there is still a presumption that a mother is generally better suited to raise a young child. See Sobieske v. Preslar, 755 So.2d 410, 413(¶ 10) (Miss.2000). The chancellor began this part of his analysis by noting that the two children born to the marriage were females, who were of a very young age. The chancellor pointed out that both children were in good health, although Lai-ni has had a problem digesting proteins. The chancellor stated that with the children being four and five, respectively, at the time of trial, this factor would normally favor Renee because of the age and sex of the children. However, the chancellor found that Herman had demonstrated his ability to appropriately take care of the children while they were temporarily placed in his custody. As a result, the chancellor ultimately found that this factor favored neither party.

(b) The Determination of the Parent that had the Continuity of Care Pri- or to the Separation

¶ 14. The chancellor found that “both [parties] cooked, fed, bathed, dressed, and otherwise took care of the children prior to separation.” As a result, the chancellor found that this factor favored neither party. Indeed, there was some evidence to support the chancellor’s finding regarding both parents’ involvement in caring for the children prior to the separation.

(c) The Determination of Which Parent has the Best Parenting Skills and Which has the Willingness and Capacity to Provide Primary Child Care

¶ 15. The chancellor found that both parties possessed sufficient parenting skills is evident from the fact that they both, at some time or another, cooked, fed, bathed and cared for the children. Therefore, the chancellor found that this factor favored neither party.
¶ 16. Unfortunately, there was evidence that reflected negatively on each party. For example, there was testimony that Renee kept a dirty house, did not appropriately attend to the children while Herman was at work, and sometimes verbally disciplined the girls in a harsh manner. There was also testimony that, during the period of time when Herman had temporary custody of the children, he often relegated the primary care of the children to others. He may have demonstrated his ability to take care of the children, but it is clear from the record that often times he was not the one who primarily cared for the children.

*669
(d) The Employment of the Parent and Responsibilities of that Employment

¶ 17. In his analysis of this factor, the chancellor gave a detailed recitation of the employment circumstances of both Herman and Renee. Herman was employed by MDR Construction. He worked on power lines. His work hours were, from 6:30 a.m. to 5:00 p.m., Monday through Thursday of each week. In addition, sometimes Herman was required to work on weekends to account for time lost throughout the week because of inclement weather. He occasionally had to travel out of town for storm repair jobs, which necessitated his being gone as long as a week at a time.
¶ 18. At the time of trial, Renee worked as a chiropractic assistant. She worked Monday through Thursday from 7:55 a.m. to 6:30 p.m. On Fridays, she worked from 7:55 a.m. to 12:30 p.m. Her job required her to work only during the day, never on weekends and never at a different location for an extended period of time.

(e) Physical and Mental Health and Age of the Parents

¶ 19. The chancellor noted that, at the time of trial, Herman was twenty-four years old, and Renee was twenty-three. Although both parties smoked, both were said to be in good physical health. There was no evidence introduced to indicate that either party had any mental problems. Consequently, the chancellor found that this factor favored neither party.

(f) Emotional Ties of Parent and Child

¶20. The chancellor found that both parents had strong emotional ties with the children. Likewise, the chancellor also found that both children had strong emotional ties with each of their parents, and that this factor favored neither party.

(g)Moral Fitness of Parents

¶ 21. Under this factor, each party attacks the moral fitness of the other. Renee asserts that Herman’s openly adulterous living arrangement is not in the best interest of their children. Herman alleges that Renee uses illegal drugs and has committed adultery herself both prior to and after their separation. The chancellor noted that neither party was in any position to question the other’s moral fitness. However, the chancellor found that this factor favored Herman.
¶ 22. Renee admitted to a one time use of marihuana some two or three months prior to the date of the drug test. Renee categorically denied ever using amphetamines and explained her positive result as being caused by her use of over the counter Sudafed medication.[2] The chancellor refused to accept Renee’s explanation for the positive test results for amphetamines because he found that Renee had not been truthful about her marihuana use. The chancellor concluded that Renee had not been forthright with the court about her positive marihuana test results because the test results were from an urine analysis, which would indicate use within a short period of time prior to testing.[3]
¶ 23. The chancellor also addressed Renee’s moral fitness on the basis of some of her past and present relationships. One relationship involved a man named Timo *670 thy Thrash. Thrash testified that he and Renee had a one-night stand while she was still married to Herman. The chancellor found Thrash’s testimony to be credible.
¶ 24. The chancellor also found fault with Renee’s relationship with Mike McLaurin. The testimony established that McLaurin and Renee were friends. They became friends after Renee and Herman separated. There was testimony that they took a trip to Florida for some sort of church social. There was also testimony that McLaurin had previously spent the night at Renee’s house, sleeping in separate bedrooms. McLaurin also allowed Renee to station her mobile home on his land, rent free.
¶ 25. The Mississippi Supreme Court has stated that it may be in the best interest of a child to remain with its mother despite her acts of indiscretion or immorality. See Cheek v. Ricker, 431 So.2d 1139, 1144-45 (Miss.1983) (citing Roberson v. Roberson, 370 So.2d 1008, 1011 (Ala.Civ.App.1979) (“a mother will not be denied custody for every act of indiscretion or immorality,” especially where no detrimental effect on the welfare of the child has been shown)); Rippon v. Rippon, 64 Ill. App.3d 465, 21 Ill.Dec. 135, 381 N.E.2d 70, 73 (1978) (“indulgence in moral indiscretions alone is not grounds for a change of custody where the children are leading a normal life”).
¶ 26. In reviewing the record, it is clear that both Herman and Renee have exhibited past behavior that cast doubt on their moral fitness. Indeed, after reading the record, we are convinced that the conduct of both parents is both unfortunate and questionable. However, since the chancellor did not find either or both parents unfit for such important responsibility and decided to favor Herman over Renee on this factor, it appears that the chancellor made a reasoned, yet difficult decision. This chancellor’s review of this factor is an example of that often used analogy that:
The trial judge saw [the] witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demean- or. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.
Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983). We chancellor’s findings on this issue were supported by substantial evidence in the record.

(h) The Home, School and Community Record of the Child

¶ 27. The chancellor found that the children were not old enough to have established a home, school or community record. Therefore, this factor did not apply.

(i) The Preference of the Child at the Age Sufficient to Express a Preference by Law

¶28. Neither of the children were of the age sufficient to express a preference. Accordingly, this factor did not apply.

(j) Stability of Home Environment and Employment of Each Parent

¶ 29. The chancellor found that Renee’s living environment was less stable than Herman’s. At the time of trial, Herman was living in a three bedroom mobile home with the girls, his live-in girlfriend, and his girlfriend’s son. The mobile home was owned by his girlfriend’s parents, located in a trailer park owned by his girlfriend’s parents, and rented month, to month pursuant to a verbal agreement. Herman and Toncrey shared a bedroom. Caitlin and Laini shared a bedroom. Toncrey’s son occupied the other bedroom. The chancellor found that Renee was living in a three *671 bedroom mobile home, with her twin daughters from a prior relationship, that she purchased. The chancellor determined that Renee was allowed to place her mobile home on land owned by McLaurin, rent free.

(k) Other Factors Relevant to the Parent-Child, Relationship

¶ 30. Under this factor, the chancellor considered Herman’s prior misdemeanor convictions of driving with a suspended license and simple assault, as well as his living arrangements with Toncrey. Although the chancellor stated that he did not approve of either, he found “that [Herman] had demonstrated his ability to be a good and responsible custodial parent after he was awarded temporary custody.” The chancellor further stated that he “cannot condone [Herman’s] present arrangement of living with Toncrey.” Having considered all these factors, the chancellor found that it was best to award custody to Herman.
¶ 31. The chancellor provided a detailed analysis of his findings for each Albright factor and weighed the prospect of each party serving as custodial parent. After “smelling the smoke of battle,” the chancellor made findings that were supported by substantial evidence. We may not agree with the chancellor’s findings. We may have decided the case differently. However, we were not present to observe the parties, the witnesses or to consider all of the evidence, facts, circumstances, events and happenings of the trial. “[I]t is the chancellor’s duty to weigh the evidence, and he is in a better position th[a]n this Court to judge the veracity of witnesses and credibility of evidence. In reviewing the record, this Court finds that the chancellor was more than justified in ruling as he did.” Lee, 798 So.2d at 1291(¶ 29).
¶ 32. Accordingly, we find no evidence that the chancellor’s decision was manifestly in error or based on an erroneous legal standard. Therefore, we affirm the chancellor’s ruling on child custody.

2. Recusal of the Chancellors

¶33. Under this assignment of error, Renee states that “she would not dare to even hint that the Honorable Chancellor Jim Persons has been subject to undue influence from either the long serving retired Clerk of the Chancery Court from which this appeal is taken, or from his staff member, the present Court Administrator.” She concludes her argument by asking this Court to “suggest that the court err on the side of caution.”
¶ 34. Renee’s argument to this court is that Chancellor Persons and the other chancellors within the district knew that Herman was the great-grandson of the retired chancery court clerk and the grand-nephew of the current court administrator. Renee argues that in situations in which the chancellor has or had a professional relationship with a party who is related to another party before the court, it would be best for the chancellor to err on the side of caution and recuse himself in order to avoid questions about the court’s impartiality.
¶ 35. Canon 3(E)(1)(a) of the Code of Judicial Conduct requires disqualification of a judge when his or her “impartiality might be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the Proceeding.” “In other words, would a reasonable person, knowing all the circumstances, harbor any doubts about the judge’s impartiality?” Bredemeier, 689 So.2d at 774 (citing Frierson v. State, 606 So.2d 604, 606 (Miss.1992)).
*672 ¶36. The record before us does not contain a motion to recuse Chancellor Persons or any of the other chancellors of the Eighth District Chancery Court. Renee does not allege that she was not aware of these familial relationships before the matter was heard by Chancellor Persons. We will not find error or make a suggestion to trial courts on matters of recusal or disqualification of judges which are not presented to the trial court for decision. Accordingly, we find no error.
CONCLUSION
¶ 37. We find no error and affirm.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., AND IRVING, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.

. Herman tested negative for amphetamines and marijuana use, while Renee tested positive for the same drugs.

. The parties stipulated that the use of Su-dafed may cause a false positive for amphetamines.

. A copy of Renee’s tests results were included in the exhibits. Despite Renee’s argument to the contrary, a careful analysis of the results does indeed reveal that she was administered an urine test.