LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Reyna and Forrest Wells were granted a divorce on the ground of irreconcilable differences in the Chancery Court of Jackson County. Forrest and Reyna were awarded joint legal custody of two twin boys born during the marriage, Jeb and Josh Wells. Forrest was awarded physical custody of the twins, and Reyna was awarded visitation rights.
 

 ¶ 2. Forrest was adjudicated not to be the father of Reyna’s third son, Ben Wells, and has no legal rights or responsibilities for this child. Reyna was ordered to pay child support in the amount of $336 a month to Forrest for the support of Jeb and Josh. Forrest was ordered to provide health and hospitalization insurance for Jeb and Josh. Reyna and Forrest were ordered to split equally any medical, dental, ocular, or psychological expenses not covered by the insurance. Each party was ordered to maintain life-insurance policies of at least $100,000, with the twins listed as equal beneficiaries.
 

 ¶ 3. The marital estate was divided as follows:
 

 
 *1253
 
 1. The marital home was awarded to Forrest. Reyna was ordered to vacate the premises and convey her interest in the home to Forrest. Forrest was ordered to pay Reyna half of the equity in the home, which was $41,878.
 

 2. The value of the couple’s furniture, appliances, and household possessions, which was found to be $25,000, was split equally between the parties. The chancellor ordered that the furniture remain in the house, and Forrest was ordered to pay Reyna half the value of the furnishings.
 

 3. The family safe contained $6,300, which Reyna took for household expenses. This amount was determined to be a marital asset, which was split equally between the parties. Half of this amount was deducted from Forrest’s payments to Reyna.
 

 4. The fair market value of Forrest’s plastic-surgery clinic, Gulf Coast Plastic and Reconstructive Surgery, PLLC, was divided equally between the parties. The fair market value was determined to be $148,000. Forrest was ordered to pay one-half of this amount to Reyna. The parties were also ordered to split equally the cost of the business appraisal, which was $7,915. Half of this amount was to be deducted from Reyna’s portion of the marital estate.
 

 5. Each party was awarded the vehicle they currently used and possessed.
 

 6. Finally, the chancellor made Forrest responsible for all the marital debt. The chancellor held that since she did not subtract Reyna’s portion of the liabilities from the marital assets, Forrest should be awarded the marital checking account; a VALIC 401 (k) retirement account, which had accumulated $8,223 in interest; and the life-insurance policy insuring his own life. The life-insurance policy had a cash value of approximately $4,500.
 

 ¶ 4. Reyna’s request for alimony and attorney’s fees was denied. Reyna and Forrest each filed motions challenging the judgment. Their motions were denied.
 

 ¶ 5. Reyna now appeals, asserting the following issues: (1) the chancellor erred in awarding custody of the twin boys to Forrest; (2) the chancellor erred in awarding the marital residence to Forrest; (3) the chancellor erred in setting child support; (4) the division and classification of personal property and assets were erroneous; and (5) the chancellor erred in denying her request for alimony and attorney’s fees. Forrest cross-appeals, arguing that the chancellor’s order did not provide for adequate child-support payments. Finding no error, we affirm on direct appeal and cross-appeal.
 

 FACTS
 

 ¶ 6. Forrest and Reyna were married on May 25,1996. Forrest is a medical doctor, and Reyna is a registered nurse. Soon after the couple married, they began attempting to conceive a child. After multiple, unsuccessful attempts with in vitro fertilization, the couple decided to select donor sperm from a cryobank. The in vitro fertilization procedure with the donor sperm resulted in the birth of twins, Jeb and Josh, on June 3, 2001. The couple attempted to conceive again but were unsuccessful. Reyna stated that she was “desperate” for another child, but Forrest only wanted another child if Reyna could conceive naturally. Without Forrest’s knowledge or consent, Reyna artificially inseminated herself with donor sperm and,
 
 *1254
 
 after multiple attempts, became pregnant. Reyna led Forrest to believe that the child was conceived naturally.
 

 ¶ 7. In order to obtain the donor sperm, Reyna used Forrest’s name as her physician’s name, and she had the sperm shipped to a fictitious plastic-surgery clinic at the couple’s home. Reyna paid for the donor sperm with a credit card she had opened in the name of the fictitious plastic-surgery clinic. Upon discovering the credit-card charges, Forrest confronted Reyna, who admitted that she became pregnant through artificial insemination and expressed remorse for deceiving him. At the time Forrest discovered the truth, Reyna was approximately eight-months pregnant. The pregnancy resulted in the birth of Ben on February 4, 2004. Forrest moved out of the marital residence in early 2005, and he returned upon being awarded the marital home in the divorce decree. Forrest testified that he was concerned about the marriage when he discovered the truth about Reyna’s second pregnancy, but he was willing to remain in the relationship. Forrest testified that he decided to end the relationship when Reyna began making threats to not let him see the children if her financial demands were not met.
 

 ¶ 8. Since the couple separated, they have been alternating custody of the twins weekly. Forrest has paid all of the financial expenses of the family from the time of the separation until the divorce decree. Forrest was thirty-eight years old, and Reyna was thirty-five years old at the time of the hearing. Forrest is a plastic surgeon and the sole owner of Gulf Coast Plastic and Reconstructive Surgery in Jackson County, Mississippi. Reyna is a registered nurse. She worked full time after the couple married, but she stayed at home after the children were born. Reyna was working part time as a pediatric nurse at the time of the hearing.
 

 STANDARD OF REVIEW
 

 ¶ 9. Our standard of review in chancery matters is well settled. This Court will not reverse a decision of a chancellor unless the chancellor’s findings were clearly erroneous, manifestly wrong, or applied an erroneous legal standard.
 
 Pearson v. Pearson,
 
 761 So.2d 157, 162 (¶ 14) (Miss.2000).
 

 DISCUSSION
 

 I. CHILD CUSTODY
 

 ¶ 10. Reyna argues that the chancellor erred in awarding physical custody of Jeb and Josh to Forrest. She argues that the chancellor erred in separating the children. It is her position that the children’s best interests would be served by keeping all three children together in her custody. She also asserts that Forrest should have been adjudicated to be Ben’s father. Reyna asserts that Forrest acted in loco parentis to Ben and, therefore, should be charged with the rights and responsibilities of a natural parent.
 

 ¶ 11. “[T]he polestar consideration in child custody cases is the best interest and welfare of the child.”
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983). According to
 
 Albright,
 
 the chancellor must consider certain factors in determining the child’s best interest.
 
 Id.
 
 We will examine those factors.
 

 1. Age, Health, and Sex of the Children
 

 ¶ 12. Jeb and Josh are twins boys. They were almost six years old at the time of the hearing. They are in good health. The chancellor found that this factor did not weigh in favor of either parent.
 

 
 *1255
 
 2.Continuity of Care
 

 ¶ 13. Prior to the separation, Reyna was the primary caretaker of the twins. From the time of the couple’s separation, the parties shared the custody of the twins. The chancellor found that both parents have shown good parenting skills. Forrest and Reyna shared custody equally during the separation, alternating custody weekly. The chancellor found that this factor did not weigh in favor of either parent.
 

 3.Parenting Skills and Willingness to Provide Child Care
 

 ¶ 14. Both parties have good parenting skills and have demonstrated a willingness to provide child care. Reyna has cut back on her work hours to be available for the children, and Forrest has assistance from his mother when he is not able to alter his work schedule to fit the children's needs. Reyna occasionally travels to Troy, Alabama, during her time with the children where they visit family and Conley Freeman, the man she is dating. The chancellor noted that Reyna allows Freeman to spend the night at the marital home while the children were present, which the chancellor found brought Reyna’s moral fitness into question. However, the chancellor found that both parents have exhibited good parenting skills during the separation. Thus, the chancellor found that this factor favored neither party.
 

 4.Employment Responsibilities of the Parents
 

 ¶ 15. Forrest works for himself and can adjust his surgery schedule to spend more time with the twins. He works close to their home and school. Forrest testified that another plastic surgeon was joining his practice in the summer of 2007, which would make his employment responsibilities even less demanding.
 

 ¶ 16. Reyna works as a pediatric nurse and has limited her work hours to spend more time with the children. Reyna testified her work schedule was flexible. However, the chancellor noted that her schedule was not as flexible as Forrest’s schedule, and if Reyna changed employment, she would likely have a set schedule. The chancellor also noted that Reyna’s job requires her to travel throughout Jackson County and into adjacent counties. The chancellor found that although Reyna would remain in a reasonable proximity to the children, Forrest would be closer. Thus, the chancellor found that this factor weighed slightly in favor of Forrest.
 

 5.Physical and Mental Health of the Parents
 

 ¶ 17. Both parties are in good physical and emotional health. The chancellor found that this factor favored neither party-
 

 6.Emotional Ties of Parent and Child
 

 ¶ 18. It is not disputed the children and parents share an emotional bond. The chancellor found that this factor favored neither party.
 

 7.Moral Fitness of the Parents
 

 ¶ 19. Several of Reyna’s actions bring her moral fitness into question. Reyna intentionally deceived Forrest when she became pregnant by artificially inseminating herself. During their separation, Forrest discovered that Reyna was involved in a relationship with Freeman. Forrest amended his complaint for divorce to add adultery as an additional ground for divorce. The chancellor noted that the sexual conduct of either parent is considered part of the moral fitness of the parent. Although adultery is not to be used as a sanction against a guilty parent in awarding custody of children, this does not preclude a chancellor from considering conduct associated with the adultery when
 
 *1256
 
 it is relevant to one of the
 
 Albright
 
 factors.
 
 See, e.g., Bower v. Bower,
 
 758 So.2d 405, 412 (¶ 29) (Miss.2000) (citing Carr
 
 v. Carr,
 
 480 So.2d 1120, 1121 (Miss.1985)). Reyna admitted that she has allowed the man she is dating to stay overnight in her home while the children are present. The chancellor found that this behavior was not in the best interests of the children, and it did not set a good example for them.
 

 ¶ 20. The chancellor also noted that Forrest and Reyna experienced financial difficulty while married because of Reyna’s spending habits. Reyna has continued to incur debt. Also, Reyna incurred a large amount of debt attempting to have a third child, and she intentionally hid the debt from Forrest. Reyna had sought help from Forrest’s mother to pay some of the credit-card debt. Forrest testified that he was unaware that Reyna had asked for his mother’s assistance in paying the debt. Forrest placed Reyna on a strict budget, only allowing her a certain amount of cash. Reyna testified that the budget was unreasonable. This caused a significant strain on the relationship.
 

 ¶ 21. The chancellor found that Reyna’s activity in accumulating and concealing debt caused her to question Reyna’s veracity. Also, her deceit in conceiving a child without Forrest’s knowledge brought her moral fitness into question. Therefore, the chancellor found that this factor weighed in Forrest’s favor.
 

 8.Home, School, and Community Record of the Children
 

 ¶ 22. At the time of the hearing, Jeb and Josh were enrolled in kindergarten and participated in a soccer league. The chancellor found that this factor favored neither party.
 

 9.Preference of the Child
 

 ¶ 23. The children were not of a sufficient age to express a preference.
 

 10.Stability of Home Environment and Employment of the Parents
 

 ¶ 24. After the separation, Forrest established a home for himself and the twins. He has a growing plastic-surgery clinic in Jackson County. He has been supporting himself, Reyna, and the children. He pays for all of his expenses and most of the expenses for the marital home. The chancellor noted that during the two years of divorce proceedings, Forrest paid nearly $80,000 annually for Reyna’s benefit. Nonetheless, Reyna accumulated significant debt during this time.
 

 ¶ 25. Reyna is a registered nurse and has the ability to work full time. She works part time in order to spend more time with the children. The chancellor expressed concern that Reyna has not shown the ability to provide a stable or financially secure home environment. The chancellor found that this factor weighed in Forrest’s favor.
 

 11.Other Relevant Factors
 

 ¶ 26. Reyna argues that it would be in the best interests of the three children to remain together. The twins and Ben are half-brothers. Reyna is their mother, and they were fathered by two different sperm donors. The chancellor found that it would be inequitable for Reyna to use her misconduct in conceiving Ben to gain custody of the twins. Reyna argues that the chancellor ignored the children’s best interests and instead sought to punish her for secretly becoming pregnant.
 

 ¶ 27. Reyna presented an expert witness, Dr. Donald Matherne, who performed a psychological evaluation of the twins. Dr. Matherne did not express an opinion on the custodial placement of the twins, but he noted that it would not be advantageous for Ben to be isolated and limited in contact with Forrest. The chancellor took into consideration that there is
 
 *1257
 
 a preference that siblings remain together unless the circumstances justify the separation.
 
 Sellers v. Sellers,
 
 638 So.2d 481, 484 (Miss.1994). However, under the circumstances of this case, Forrest was not adjudicated to be Ben’s father. Forrest has no rights or legal interest in this child. Therefore, the chancellor was presented with the option of either keeping the children together and awarding custody of all three children to Reyna or separating the children by awarding the twins to Forrest. As the chancellor found it would be in the best interests of the children to award custody to Forrest, it would be unfair to deny him custody because it would separate the twins from their half-brother.
 

 ¶ 28. The chancellor found three of the
 
 Albright
 
 factors in Forrest’s favor, and she found the rest to be either neutral or inapplicable. We find that the chancellor thoroughly considered each of the
 
 Albright
 
 factors in awarding custody of Jeb and Josh to Forrest. Although there is a preference for siblings to remain together, this is only one factor. When considering the factors together as a whole, we cannot find that the award of child custody was clearly erroneous. ‘Where the chancellor properly considers and applies the
 
 Albright
 
 factors, the appellate court cannot say the chancellor is manifestly wrong; such careful consideration and application by the chancellor precludes reversal on appeal.”
 
 Jerome v. Stroud,
 
 689 So.2d 755, 757 (Miss.1997). Therefore, we affirm the award of custody of the twins to Forrest.
 

 II.MARITAL RESIDENCE
 

 ¶ 29. Reyna argues that because she should have been granted primary physical custody of the children, she also should have been granted the exclusive use and possession of the marital residence.
 
 See Chamblee v. Chamblee,
 
 637 So.2d 850, 863 (Miss.1994) (“It is preferable that the party who is awarded such custody should also be awarded use of the marital home.”). Having found that the award of child custody was not made in error, we also find that this issue is without merit.
 

 III. CHILD SUPPORT
 

 ¶ 30. The chancellor awarded Forrest child support in the amount of $336 per month for Jeb and Josh. Reyna states in her brief that this amount was not supported by the evidence. No elaboration is made as to why the award was erroneous. No legal authority is cited for her argument. “Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment.”
 
 Eagle Mgmt., LLC v. Parks,
 
 938 So.2d 899, 903 (¶ 9) (Miss.Ct.App.2006).
 

 IV. DIVISION OF ASSETS
 

 ¶ 31. Reyna argues that the chancellor erred in dividing the marital property. When reviewing questions of equitable distribution, this Court “look[s] to the chancellor’s application of the
 
 Ferguson
 
 factors.... ”
 
 Phillips v. Phillips,
 
 904 So.2d 999,1001 (¶ 8) (Miss.2004) (citing
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994)). In
 
 Ferguson,
 
 the Mississippi Supreme Court set forth factors that chancellors must consider when equitably dividing a marital estate.
 
 Hults v. Hults,
 
 11 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App.2009) (citing
 
 Ferguson,
 
 639 So.2d at 928). We will examine those factors.
 

 1. Contribution to the Accumulation of Property
 

 ¶ 32. When considering the first factor, contribution to the accumulation of property, chancellors should consider: (a) the direct or indirect economic contribution to the acquisition of the property; (b) contribution to the stability and harmony of the marital and family relationships as
 
 *1258
 
 measured by quality, quantity of time spent on family duties, and duration of the marriage; and (c) contribution to the education, training, or other accomplishments bearing on the earning power of the spouse accumulating the assets.
 
 Ferguson,
 
 639 So.2d at 928.
 

 ¶ 33. The chancellor found that each party made a direct or indirect economic contribution to the household. Forrest worked as a surgeon, and Reyna worked at home taking care of the children and household duties. Forrest and Reyna were married for almost eight years. Reyna concealed credit-card debt from Forrest during the marriage and conceived a child through artificial insemination without Forrest’s knowledge. Reyna alleges that Forrest physically and emotionally abused her. Forrest adamantly denies this allegation. Reyna presented one witness to corroborate her testimony. The ■witness testified that she did not see any actual abuse occur, but she saw bruises on Reyna.
 

 ¶ 34. When the couple married, Forrest had obtained his undergraduate and medical school degrees, and he had finished his first year of medical residency. Forrest completed an additional year of residency in Alabama while Reyna worked as a nurse. The couple then moved to Illinois, where Forrest completed a residency specializing in plastic surgery. Reyna did not work outside the home while the couple lived in Illinois. Reyna had already obtained her nursing degree before she and Forrest married.
 

 2.Dissipation of Assets
 

 ¶ 35. The chancellor noted that Reyna took $6,300 in cash from the family safe. She testified that she spent the money to hire an attorney, purchase items for the children, and pay for household expenses.
 

 3.Market or Emotional Value of Assets Subject to Distribution
 

 ¶ 36. The market value of the marital home was $410,000. Forrest valued the household furnishings at $25,000. Forrest estimated the value of Reyna’s vehicle to be $20,000 with a balance of $5,054 owed. Forrest estimated his vehicle was worth approximately $5,000. Reyna did not present values for these items. The value of Forrest’s medical practice was $148,000. Forrest paid for the expert’s appraisal, which was $7,915. The chancellor found that the cost of the appraisal should be split equally between the parties.
 

 4.Value of Assets Not Subject to Distribution
 

 ¶ 37. The following items were determined by the chancellor to “be Forrest’s non-marital assets and not subjection to distribution: (1) Forrest’s retirement account in the amount of $32,000; (2) Forrest’s interest in the Mississippi Gulf Coast Surgical Center valued at $52,339; and (3) any increase in the value of Forrest’s business, Gulf Coast Plastic and Reconstructive Surgery, PLLC, since September 30, 2004. Reyna’s non-marital assets were certain items of furniture that had been purchased by her parents.
 

 5.Tax and Economic Consequences of the Distribution
 

 ¶ 38. No testimony was presented regarding this factor.
 

 6.The Extent to Which Property Division May Eliminate the Need for Alimony
 

 ¶ 39. The chancellor found that the best way to divide the marital property would be to award assets in whole rather than dividing them between the parties in order to eliminate the need for alimony.
 

 7.Financial Security of the Parties
 

 ¶ 40. The chancellor determined that each party has the ability to earn income
 
 *1259
 
 sufficient to provide financial security without any contribution from the other party. Although Reyna’s earning capacity is less than Forrest’s, she is still able to support herself comfortably as a nurse. Reyna argues that Forrest is more financially secure than her because he has a significant amount of non-marital assets which were accumulated after the entry of the temporary order. However, the chancellor ordered Forrest to be responsible for the debt accumulated during the marriage. Forrest was also ordered to pay for the marital home, and he paid Reyna’s and the children’s living expenses during the separation.
 

 8. Any Other Factor That Should be Considered
 

 ¶ 41. Since the time of the temporary order, Forrest has paid Reyna’s living expenses in excess of $80,000 per year. He has paid Reyna $1,500 a month in alimony and $650 a month for groceries. He has done so even though he and Reyna have alternated custody of the twins weekly. Despite this, Reyna has incurred debt.
 

 ¶ 42. After considering the foregoing factors, the chancellor determined that the marital estate should be split equally. After dividing the property, the chancellor made Forrest responsible for the marital debt. In order to maintain an equitable result, the chancellor awarded Forrest the marital checking account, the interest in the 401 (k), and his interest in his life-insurance policy.
 

 ¶ 43. We cannot find that the chancellor’s division was clearly erroneous. The
 
 Ferguson
 
 factors were thoroughly considered, and the division was made in such a way as to eliminate alimony.
 

 V. ALIMONY
 

 ¶ 44. The chancellor found that the division of property left no need for alimony. Reyna argues that she should have received lump-sum alimony because Forrest’s non-marital assets are significantly greater than her non-marital assets. Reyna points out that Forrest’s non-marital estate was valued at $613,848, and her non-marital estate was valued at $3,550. However, Reyna was awarded assets in excess of $100,000 and none of the debt. Therefore, we find that the chancellor did not err in denying alimony.
 

 VI. ATTORNEY’S FEES
 

 ¶ 45. The chancellor likewise denied Reyna’s request for attorney’s fees upon finding that both parties were capable of paying their own legal expenses. Except for $2,500 which was given to her by Forrest, Reyna relied on credit cards to finance the divorce proceeding. She states her attorney’s fees are over $40,000. Generally, “[a]n award of attorney’s fees is appropriate in a divorce case where the requesting party establishes an inability to pay.”
 
 Gray v. Gray,
 
 745 So.2d 234, 239 (¶ 26) (Miss.1999) (citations omitted). However, if “a party is financially able to pay her attorney, an award of attorney’s fees is not appropriate.”
 
 Young v. Young,
 
 796 So.2d 264, 268-69 (¶ 11) (Miss.Ct.App.2001). Whether to award attorney’s fees in a divorce case is a discretionary matter left to the chancellor’s determination; thus, this Court is “reluctant to disturb” such a finding.
 
 Id.
 
 at 268 (¶ 11). We agree with the chancellor’s determination that Reyna has failed to show that she is incapable of paying her own attorney’s fees. Therefore, we find that this issue is without merit.
 

 Cross-appeal
 

 ¶ 46. In his cross-appeal, Forrest argues that the amount of child support set by the chancellor is too low. The chancellor ordered Reyna to pay Forrest child support in the amount of $336 per
 
 *1260
 
 month. The chancellor used the child-support guidelines set out in Mississippi Code Annotated section 43-19-101(1) (Rev. 2009). This section states that for two children, child support should be set at twenty percent of the non-custodial spouse’s adjusted gross income. Reyna’s monthly income working part time as a nurse is $1,680. Twenty percent of this amount is $886. However, Forrest argues that Reyna should be ordered to pay twice that amount, or $672, based on full-time employment. Reyna worked full time for approximately six months during a probationary period, but then she cut back her hours to part time to spend more time with the children.
 

 ¶ 47. Forrest argues that income should be imputed to Reyna because she is working at less than full capacity. This Court has held that “income will be imputed to a child[-]support payor who, in bad faith, voluntarily worsens his financial position.”
 
 Howard v. Howard,
 
 968 So.2d 961, 972 (¶ 25) (Miss.Ct.App.2007). “[A]n obligor’s financial position cannot be voluntarily worsened in an attempt to lessen his [or her] child[-]support obligation.”
 
 Swiderski v. Swiderski,
 
 18 So.3d 280, 286 (¶ 25) (Miss.Ct.App.2009). There is no evidence that Reyna reduced her work hours in bad faith to reduce her child-support obligation. The chancellor noted multiple times that Reyna’s goal in reducing her work hours was to spend more time with the children.
 

 ¶ 48. The chancellor’s decision whether or not to impute income is discretionary. We cannot find the chancellor was manifestly wrong or abused her discretion by not imputing income to Reyna. Therefore, the award of child support is affirmed. The cross-appeal is without merit.
 

 ¶ 49. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.