ROBERTS, J.,
for the Court:
¶ 1. Victoria Sebren May appeals the Simpson County Chancery Court’s decision to award custody of her son, Eli, to his father, James Hilliard May, after she and James received an irreconcilable-differences divorce. Victoria claims the chancellor improperly applied four of the familiar factors from Albright v. Albright, 437 So.2d 1003 (Miss.1983). However, we find no merit to Victoria’s claims. Accordingly, we affirm the chancellor’s judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. James and Victoria May were married on June 15, 2002. They separated on November 3, 2009. They later divorced because of their irreconcilable differences. At the time the parties went before the chancellor, James and Victoria’s son, Eli, was seven years old. Both James and Victoria sought custody of Eli. James and his parents, Hilliard and Mary, testified that James should have primary custody of Eli. However, Victoria and her parents, Kenneth and Connie, testified that Victoria should have primary custody of Eli.
¶ 3. Ultimately, the chancellor awarded custody of Eli to James. According to the chancellor, the following factors favored awarding custody of Eli to James: the age, health, and sex of the child; employment of the parent and responsibilities of that employment; and the home, school, and community record of the child. The chancellor held that the stability of the home environment and employment of each parent favored Victoria. However, the chancellor found that the remaining factors did not favor either James or Victoria. Victoria received visitation, and the chancellor held that Victoria was to pay James $300 per month in child support. Victoria appeals the chancellor’s decision to award custody of Eli to James.
STANDARD OF REVIEW
¶ 4. In domestic-relations cases, our standard of review is limited. In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010). The findings of the chancellor “will not be disturbed unless [they are] manifestly wrong or clearly erroneous.” Lowrey v. Lowrey, 25 So.3d 274, *1054 285 (¶ 26) (Miss.2009) (citing Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002)). “Under the standard ... utilized to review a [chancellorj’s findings of fact, particularly in the areas of divorce, alimony and child support, [the appellate court] will not overturn the [chancellor’s decision] on appeal unless [his] findings were manifestly wrong.” Wood, 35 So.3d at 512 (¶ 8) (quoting Duncan v. Duncan, 774 So.2d 418, 419 (¶ 4) (Miss.2000)).
ANALYSIS
¶ 5. Victoria claims the chancellor erred in his application of the following four factors listed in Albright: continuity of care prior to the separation; parenting skills and the willingness and capacity to provide primary child care; employment of each parent and responsibilities of that employment; and the home, school, and community record of the child. The chancellor found that the first and second factors did not favor either Victoria or James. However, the chancellor found that the third and fourth factors favored James.
¶ 6. In appeals from child-custody decisions, our polestar consideration, like the chancellor’s, must be the best interest of the child. Montgomery v. Montgomery, 20 So.3d 39, 42 (¶ 9) (Miss.Ct.App.2009) (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 8) (Miss.2002)). We are prohibited from substituting our judgment for the chancellor’s. Id. We may only reverse a child-custody determination if the chancellor was manifestly wrong, clearly erred, or applied an erroneous legal standard. Id. When a chancellor properly applied and considered the child-custody factors from Albright, there is no manifest error. See Smith v. Smith, 614 So.2d 394, 397 (Miss.1993).
¶ 7. “Determining custody of a child is not an exact science.” Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001). Instead, it “is one of the most difficult decisions that courts must make.” Brewer v. Brewer, 919 So.2d 135, 141 (¶ 21) (Miss.Ct.App.2005). In Albright, the Mississippi Supreme Court gave a list of factors to consider to help chancellors “navigat[e] what is usually a labyrinth of interests and emotions.” Lee, 798 So.2d at 1288 (¶ 15) (citing Albright, 437 So.2d at 1005). The Albñght factors provide chancellors guidance, not a mathematical formula. Id. “[E]ven when the trial judge sensitively assesses the factors noted in Albright and [its] progeny, the best the judiciary can offer is a good guess.” Love v. Love, 74 So.3d 928, 932 (¶ 17) (Miss.Ct.App.2011) (quoting Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss.1991)).
¶ 8. An Albright analysis is not premised solely on a scoring system to determine which parent “wins.” Blakely v. Blakely, 88 So.3d 798, 803 (¶ 17) (Miss.Ct.App.2012) (citing Lee, 798 So.2d at 1288 (¶ 15)). “Instead, the Albright factors exist to ensure the chancellor considers all the relevant facts before she reaches a decision.” Id. And our review for manifest error is not a mechanical check on the chancellor’s score card to see if she “tallied” each parent’s score correctly. See id. Instead, we ask whether the chancellor considered all relevant facts, giving deference to the weight she assigns each factor. We turn to Victoria’s claims on appeal.
I. Continuity of Care Prior to Separation
¶ 9. Victoria’s entire argument under this heading is as follows:
[Victoria] testified that she was the one [who] took [Eli] to the doctor for every visit. [James] would sometimes go with [Victoria] and [Eli,] but [Victoria] was always the primary person for doctor[’]s visits. In fact, on cross[-]examination[,] [James] state[d] that he had taken [Eli] *1055 to the doctor once. “Well, I took him to ... his pediatrician. It’d be about three or four. But Victoria mainly took him because she was able to get paid for taking off — she had time off. And me, if I missed a day, I missed a pay check. So she mainly took him.” [James], over the course of the marriage[,] had six different jobs. [Victoria] testified that she was the one who got [Eli] ready for school as [James], when not working, would sleep in. [Victoria] was the one who got [Eli’s] clothes ready[] and ironed. When [Victoria] and [Eli] did not eat at [James’s] parents’] home, [Victoria] did the cooking. [James] admitted he did not do much cooking. “I very seldom — I mean, I can do soup. I can do soup and grill stuff. That’s about all I can handle.”
Victoria did not cite any authority to support her argument that the chancellor improperly found that this factor did not favor either party. Her failure to cite relevant authority obviates our obligation to review this issue. Mann v. Mann, 904 So.2d 1183, 1185 (¶ 12) (Miss.Ct.App.2004) (citation omitted). Simply citing the Al-bright factors provides us with no insight as to how the chancellor erred when he concluded that this factor did not favor either James or Victoria.
¶ 10. Rather than relying on authority, Victoria invites this Court to simply reweigh the chancellor’s findings of fact. “So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor’s decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor.” Hammers v. Hammers, 890 So.2d 944, 950 (¶ 14) (Miss.Ct.App.2004) (quoting Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss.2000)). Victoria did not go into any more detail regarding her claim that the chancellor erred in his application of this factor. Apparently, the crux of her argument is that the chancellor should have weighed this factor in her favor because she took Eli to the majority of his doctor’s appointments, cooked for the family when they did not eat at James’s parents’ house, and got Eh ready for school in the mornings. In any event, the chancellor also heard evidence that James took Eli to at least some of Eli’s appointments with medical professionals. Because the chancellor heard evidence that James and Victoria divided the labor involved with Eli’s care, we do not find that the chancellor erred when he found that this factor weighed evenly between James and Victoria.
II. Parenting Skills and Willingness and Capacity to Provide Child Care
¶ 11. Victoria claims the chancellor erred when he found that this factor did not favor James or Victoria. Victoria’s entire argument under this heading is as follows:
The [chancellor] found this factor to be equal. However, the [c]hancellor erred in this as he gave [James] the benefit of his mother’s capacity to provide primary care for the child. Despite [James]’s father’s hard[-]to[-]believe claim that [Victoria] would push [Eli] away so he couldn’t get in her lap, [Victoria] was the one with the better parenting skills and willingness to care for [Eli]. As previously discussed, [James] would sleep in while [Victoria] got [Eli] ready for school. [Victoria] took [Eli] to the doctor and cooked. After the separation, when [Eli] failed two eye exams and had to get glasses, [James] did not take [Eli], [Victoria] had [Eli] and [James] on her insurance. [James] obtained insurance through his most recent employment but failed to notify [Victoria] of same, costing [Victoria] an unknown *1056 amount of money. [James] did not place [Eli] on his insurance when [James] obtained it. [James] testified that he and [Eli] are best friends. Being a child’s best friend, as opposed to a parent, is not the best parenting skills [sic]. The record is replete with examples of [James]’s mother doing any parenting that is done by or for [James], [James]’s mother testified that “[typically, when James is with Eli, he and I leave the house around ten minutes to seven ... [,][a]nd I meet him in the afternoon when his bus comes in.” [James’s mother also testified that Eli] “goes to school, [and] I pick him up [in] the ... same spot I do every afternoon. We come home. We get started on homework.”
¶ 12. Again, Victoria cites no authority for her argument under this heading. Again, her failure to cite relevant authority obviates our obligation to review this issue. Mann, 904 So.2d at 1185 (¶ 12) (citation omitted). As for whether the chancellor should have believed James’s father’s testimony that he had “seen [Eli] try to get in [Victoria’s] lap, and she’d push him back,” it is not this Court’s position to weigh the credibility of a witness’s testimony. “The chancellor has the sole responsibility to determine the credibility of witnesses and evidence, and the weight to be given each.” Barnett v. Oathout, 883 So.2d 563, 566 (¶ 6) (Miss.2004).
III. Employment of Each Parent and Responsibilities of that Employment
¶ 13. Next, Victoria argues that the chancellor mistakenly applied the factor that involves the employment of each parent and the responsibilities of that employment. The chancellor weighed that factor in James’s favor. Victoria does not specify whether she is of the opinion that the chancellor should have weighed that factor in her favor or whether the chancellor should have weighed that factor evenly between her and James. Instead, Victoria simply notes that James had six different jobs during the course of her nine-year marriage to James. She then notes each of their hours and draws our attention to James’s testimony that he could not take off work without losing a portion of his pay, while Victoria could take off work more easily. Finally, Victoria elaborates on the fact that James bought her father’s gutter business and later sold it to pay delinquent bills. Victoria added that James “ran the business so poorly, [James’s] bank account was levied after the separation by the State Tax Commission.”
¶ 14. The manner in which James ran the gutter business he purchased has no bearing on the factor over which Victoria laments. Furthermore, Victoria did not cite any authority to support her argument that the chancellor improperly found that this factor favored James. Again, the failure to cite relevant authority obviates our obligation to review this issue. Mann, 904 So.2d at 1185 (¶ 12) (citation omitted).
IV. The Home, School, and Community Record of the Child
¶ 15. Finally, Victoria takes issue with the chancellor’s decision that Eli’s home, school, and community record weighed in favor of awarding James custody of Eli. Victoria’s entire argument under this heading is as follows:
As has been discussed above, [James] is being given the benefit of his mother’s direct, constant participation in [Eli’s] life.... [Victoria] testified that she was living with her parents in Puckett, Mississippi. The parties, prior to the separation, lived in the Everett community of Simpson County, Mississippi. [Eli] at *1057 tends school in Magee. The [chancellor] found that the parties had split the difference between Puckett and Magee. [Eli] would not be appreciatively closer to school living with [James] [rather] than with [Victoria]. [Victorians mother works the same hours as [James]’s mother, and thus has as much time to care ... for [Eli] until [Victoria] gets home as does [James]’s mother. In fact, [Eli] would have his maternal grandmother, maternal grandfather, and maternal great[-]grandmother to care for him prior [to] [Victoria] returning home from work. [Eli] previously attended day care in Puckett, played sports in Puckett, prior to the year of the separation, and has as many friends in Puckett as he does in Magee as well as other family at the school in Puckett.
¶ 16. Yet again, Victoria did not cite any authority to support her argument that the chancellor improperly found that this factor favored James, which obviates our obligation to review this issue. Mann, 904 So.2d at 1185 (¶ 12) (citation omitted).
¶ 17. THE JUDGMENT OF THE SIMPSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.