ISHEE, J.,
for the Court:
¶ 1. This case stems from a contested adoption suit that was filed in Prentiss County Chancery Court between paternal grandparents, Steven Beard and Jackie Elaine Beard, and paternal great-grandparents, Eugene Berryman and Patsy Ber-ryman. On November 17, 2011, the biological parents of minor twins, N.B. and *222 K.B.,[1] irrevocably surrendered their rights to the minor children to the Prentiss County Department of Human Services (DHS). Subsequently, the Beards and the Berrymans filed separate complaints seeking adoption of the minor children. On August 29, 2012, the chancery court permitted the Berrymans to adopt the minor children. The Beards later filed a motion for reconsideration, which was denied. The Beards appealed. Finding no reversible error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. N.B. and K.B., male twins, were born to Jennifer Raines and Eric Beard in Corinth, Mississippi, on October 3, 2011. At that time, Jennifer, Eric, and their two-year-old son, C.B., were living with Eric’s mother and Steven’s ex-wife, Kristy Beard Rich. For the first month of the twins’ lives, various family members, including the Berrymans, assisted Jennifer and Eric in caring for the twins. Jennifer and Eric mentioned to family members several times that they did not think they could care for the twins. Approximately a month following the birth of the twins, Jennifer and Eric surrendered the twins to Baptist Memorial Hospital in Booneville, Mississippi.
¶ 3. DHS was notified that a set of twins had been abandoned at a hospital by the biological parents who wished to put them up for adoption. DHS offered to provide assistance that would enable Jennifer and Eric to keep the children, but the couple refused. Subsequently, an emergency order was entered directing the children to be taken into custody by DHS. Pursuant to that order, the twins were placed with their paternal aunt and uncle, Chris and Lori Jones. Approximately two days later, the children were relocated to a licensed foster home in Tishomingo County, Mississippi, where they remained for approximately a week. Thereafter, DHS placed the children in the home of the Beards, who kept the children for a few days.
¶ 4. On November 8, 2011, the Prentiss County Youth Court executed an order instructing that a home study and background check of the Beards be completed within fourteen days. The order provided: “[G]iven no finding that the [c]hildren should not be placed with a suitable relative, the children shall be placed with the [grandparents.” An additional order was executed on November 10, 2011, instructing that a home study and background check of the Berrymans also be completed. The additional order provided:
[Sjhould said background check and/or home study make no finding that the children should not be placed with these grandparents, then the Court does direct that said children shall be placed with the children’s paternal grandparents, namely, Eugene and Patsy Berry-man, until further orders of the Court.
The children were then placed with the Berrymans that same day. A report recommending that the children stay with the Beards was given on November 14, 2011. No other orders were entered by the youth court altering its directive for placement of the children with the Berrymans.
¶ 5. On November 16, 2011, the Beards filed suit in the chancery court, joining DHS as a defendant, to terminate the parental rights of the biological parents and adopt the twins. A voluntary surrender of parental rights was executed by Jennifer and Eric and attached to the Beards’ peti *223 tion on November 17, 2011. On November 21, 2011, the Berrymans filed their complaint for adoption, also joining DHS. The cases were later consolidated upon a joint motion of the parties. On February 14, 2012, Lisa A. Koon was appointed to the case as the guardian ad litem (GAL).
¶ 6. A trial was held on July 23, 2012. The chancery court heard testimony from all parties, as well as testimony by DHS adoption specialist Tonya McAnally, and the paternal aunt, Lori Jones. At the conclusion of the trial, the chancellor took the matter under advisement. The report and recommendation of the GAL was filed with the chancery court on August 2, 2012. Pursuant to an Albright[2] analysis, the GAL was unable to make a clear finding as to who would be the most suitable parents. However, citing the Berrymans’ age as the primary factor, the GAL recommended adoption of the twins by the Beards.
¶ 7. After considering the evidence and conducting her own Albright analysis, the chancellor granted the Berrymans’ petition for adoption on August 29, 2012. On September 13, 2012, a supplemental decree was issued, clarifying the judgment. Shortly after, the Beards filed a motion for reconsideration, requesting a new trial and raising several issues for the chancellor to review and reconsider.
¶ 8. In response, the chancery court conducted a hearing for oral arguments on the motion on November 15, 2012. At that time, the Beards requested that the previous trial conducted on July 23, 2012, be transcribed and reviewed prior to the issuance of a final decision. On December 27, 2012, the chancellor rendered a detailed opinion in favor of the Berrymans. Aggrieved, the Beards now appeal.
DISCUSSION
119. “In a case disputing child custody, the chancellor’s findings will not be reversed unless manifestly wrong [or] clearly erroneous, or the proper legal standard was not applied.” Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003) (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 8) (Miss.2002)). The Mississippi Supreme Court has found that “[i]t is the role of the chancellor to ascertain whether witnesses and evidence are credible and the weight to give each.” Robison v. Lanford, 841 So.2d 1119, 1122 (¶ 9) (Miss.2003) (citing Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994)). Furthermore, “we, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified.” Mosley v. Mosley, 784 So.2d 901, 905 (¶ 15) (Miss. 2001) (citing Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
¶ 10. The Beards argue that the chancellor abused her discretion in her analysis of the Albright factors. Further, the Beards assert that the chancellor abused her discretion by failing to follow the report and recommendation of the GAL. The Beards claim that the reasons given for disregarding the GAL’s recommendation were manifestly wrong and not supported by the record. Therefore, the Beards contend that the chancellor erred in granting the Berrymans’ petition for adoption and that it would be in the best interest of the minor children to be adopted by the Beards. We disagree.
¶ 11. Mississippi Code Annotated section 93-17-8 (Rev.2013) provides guidance regarding contested adoptions. When it is determined that a parent is not entitled to object to the adoption proceedings, the court “shall determine the custody of the child in accord with the best interests of *224 the child and the rights of the parties as established by the hearings and judgments.” Miss.Code Ann. § 93-17-8(l)(c). It is undisputed by all parties that the biological parents have no interest in the adoption since they unequivocally surrendered their parental rights and chose not to participate in the proceedings.
I. The Albright Factors
¶ 12. In determining the best interest of the child, the following factors should be considered:
Age[,] ... health, and sex of the child; a determination of the [party] that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of [each party] and responsibilities of that employment; physical and mental health and age of the [parties]; emotional ties [with the] child; moral fitness of [parties]; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each [party], and other ... relevant [factors.]
Albright, 437 So.2d at 1005. Here, the chancellor went through an extensive analysis of each Albright factor in the final judgment and in her reconsideration of that judgment. In her initial Albright analysis, the chancellor found that four factors favored the Berrymans, one factor favored the Beards, and six factors favored neither party. Upon reconsideration of the judgment, the chancellor found that six factors favored the Berrymans, one factor favored the Beards, and four factors favored neither party.
¶ 13. The Beards claim the chancellor erred in her application of the following seven factors listed in Albright: age, health, and sex of the children; continuity of care; parenting skills; moral fitness of the parents; stability of home environment and employment of each parent; and other factors. However, of all the factors challenged, the Beards only cite to authority in support of their claim against the chancellor’s decision regarding continuity of care. “Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment.” Wells v. Wells, 35 So.3d 1250, 1257 (¶ 30) (Miss.Ct.App.2010) (citations omitted). We will address only those factors that the Beards challenge on appeal.
A. Age, Health, and Sex of the Children
¶ 14. The Beards contend that the chancellor erred in finding that the age, health, and sex of the children did not weigh in favor of either party. The Beards argue that, due to the significant age gap between the minor infants and the Berrymans, this factor should weigh in their favor.
¶ 15. In support of their argument, the Beards reference testimony given by Patsy in which she addressed the age difference between her and her husband and the twins, as well as the potential problems that may arise in the future because of that age difference. Patsy acknowledged that in ten years, her and her husband would be in their seventiés and that health issues that arise in old age could hinder their ability to care for the minor children. However, she also testified that her and her husband were in good health, and so long as that continues, she does not foresee a problem with their ability to act as parents to the twins.
¶ 16. The Beards argument centers on the Berrymans’ age, not the children’s age. In her written opinion, the chancellor stated that “[t]he court considers the age of the parties under the relevant factor here *225 inafter.” The record reflects that there was no evidence presented that the children’s age, health, or sex raised a concern that would favor either party. The subject of the parties’ age was discussed under the catch-all factor and the chancellor found that it weighed in favor of the Beards.
¶ 17. After reviewing the record, there is credible evidence to support this decision. The chancellor, however, declined to base her entire ruling of custody on one factor. “Age should carry no greater weight than other factors to be considered .... ” Albright, 437 So.2d at 1005. We agree with the chancellor’s handling of this factor.
B. Continuity of Care
¶ 18. The Beards argue that the chancellor erred in finding that the continuity of care for the minor children favored the Berrymans. The Beards contend that the chancellor abused her discretion by focusing solely on the contact and care provided by the respective parties during the thirty-day period after the minor children’s birth, when the biological parents still maintained custody. The Beards assert that the chancellor should have also considered the continuity of care after the children were abandoned by the parents, and both parties began to initiate suits for adoption. The Berrymans argue that, from the outset, they have maintained the continuity of care.
¶ 19. In support of their argument, the Beards cite to Jerome v. Stroud, 689 So.2d 755 (Miss.1997). In Jerome, the Mississippi Supreme Court emphasized the importance of considering both the present and the past when making determinations pursuant to an Albright analysis. Id. at 757. The supreme court has reaffirmed the ruling in Jerome, stating the “time between [the] separation and trial should be considered in determining continuity for [the] children.” Copeland v. Copeland, 904 So.2d 1066, 1076 (¶ 39) (Miss.2004) (citation omitted).
¶ 20. The record reflects that Patsy maintained daily contact with the biological mother and the twins following their release from the hospital after the twins’ birth. Further, Patsy testified that the biological father would drop the twins off or she would pick them up, so she could take care of them while he worked. The Beards admitted that, prior to the twins’ abandonment, they had only seen the children once.
¶ 21. Once the twins were surrendered at the hospital, the Beards contacted DHS to express their interest in adopting them. The twins were placed with the Beards for approximately three days before a court order was entered placing them with the Berrymans. Shortly after, the Berrymans agreed to allow the Beards to have visitations with the twins. This arrangement remained in place for seven months, until the date of the hearing on the matter of adoption.
¶22. In reaching her conclusion, the chancellor acknowledged the time prior to and after the twins’ separation from their biological parents. The chancellor concluded that, not only did the Beards have limited contact with the twins prior to their abandonment, but that any contact with the twins after their separation was done through arrangements made on behalf of the Berrymans. We agree. Therefore, we do not find that the chancellor erred when he found that this factor weighed in favor of the Berrymans.
C. Parenting Skills
¶ 23. The Beards contend that the chancellor erred when she revised her initial opinion to find that this factor favored the Berrymans. In her initial analysis, the chancellor found this factor to be neutral *226 since neither side criticized the other side’s parenting skills and all seemed to have the appropriate parenting skills necessary for the twins. Upon consideration of the post-trial motion, however, the chancellor found that the parties’ past relationships with their own children deserved scrutiny.
¶ 24. The chancellor concluded that due to the strained relationship that Steven had with his son and the twins’ biological father, Eric, this factor favored the Berry-mans. The chancellor found, upon further review, that the Berrymans and their children did not have the same problems. The Beards contend that Steven’s relationship with Eric should not have been at issue in this case.
¶ 25. There was ample testimony regarding the father-son relationship, and therefore, it became credible evidence that the chancellor considered when weighing this factor. The relationship Steven has with his own son is a direct example of his parenting skills. We do not find that the chancellor erred in considering the relationship the parties had with their children, current or prospective, when reconsidering their parenting skills.
D. Moral Fitness of the Parties
¶ 26. The Beards argue that the chancellor erred when she considered their post-trial conduct in her reconsideration of the moral fitness of the parties. Initially, the chancellor concluded that both parties enjoyed a lengthy marriage and a good relationship. The chancellor found that both parties attended church, were without a criminal record, and that there was no evidence of moral unfitness.
¶ 27. On December 12, 2012, an article was published on the front page of the Northeast Mississippi Daily Journal, titled “Prentiss custody battle raises questions,” along with a photograph portraying and identifying the Beards and the twins. Subsequently, the chancellor rendered an order on December 13, 2012, pursuant to Uniform Chancery Court Rule 3.10, which provides:
No person shall undertake to discuss with or in the presence or hearing of the Chancellor the law or the facts or alleged facts of any litigated action then pending in the Court or likely to be instituted therein, except in the orderly progress of the trial, and arguments or briefs connected therewith. No attempt in any manner, except as above stated, to influence the Chancellor’s decision shall be made. No person shall send any written communication to the Chancellor concerning a pending action in the Court without delivering or mailing a copy of that communication to the opposing party. The Chancellor shall file in the court file all such written communications received by him. Any person who shall violate this rule, knowing that such conduct is prohibited, shall be guilty of a contempt.
In her final ruling on December 27, 2012, the chancellor considered the Beards’ conduct and found that the factor regarding moral fitness weighed in favor of the Ber-rymans. In support of her decision, the chancellor stated that “initiating such public exposure regarding this pending confidential matter is in conflict with well-established law regarding the confidentiality of Youth Court and adoption proceedings.” We agree.
¶ 28. The Beards argue that it is not proper to consider this post-trial conduct. However, consideration of post-trial conduct with regard to this particular factor has been upheld by this Court. See Love v. Love, 74 So.3d 928, 935-36 (¶¶ 29-34) (Miss.Ct.App.2011). We do not find that the chancellor erred in her reconsideration of this factor.
*227 E. Stability of Home Environment and Employment of Each Parent
¶29. The Beards argue that the court “incorrectly penalized” them when it found this factor to be in favor of the Berrymans. The Beards assert that the chancellor placed too much emphasis on the fact that Jackie’s adult children had been in and out of the home, as well as considering the nature of their relationship with those children. They contend that the evidence does not provide that this conduct was destabilizing to the twins in any way.
¶30. In her analysis, the chancellor noted that the Berrymans are a retired couple with good retirement incomes who have resided in the same home since 1972. The chancellor also acknowledged that the Beards have stable jobs and that Jackie has owned her own home for many years. However, the chancellor concluded that due to the presence of other persons in the Beard residence, as well as Steven’s relationship with Eric, this factor weighed slightly more in favor of the Berrymans.
An Albright analysis is not premised solely on a scoring system to determine which parent “wins[,]” ... [a]nd our review for manifest error is not a mechanical check on the chancellor’s score card to see if she “tallied” each parent’s score correctly. Instead, we ask whether the chancellor considered all relevant facts, giving deference to the weight she assigns each factor.
May v. May, 107 So.3d 1052, 1054 (¶ 8) (Miss.Ct.App.2013) (internal citations omitted). We find that the chancellor considered all the evidence provided and did not abuse her discretion in reaching her decision that this factor favored the Berry-mans.
F. Other Factors
¶31. The Beards contend that the chancellor erred in failing to consider the parties’ present relationship with the twins’ biological family, as well as their ability to foster a continuing relationship with the twins’ biological brother, C.B. The chancellor concluded, both initially and finally, that the twins’ relationship with their biological brother was not a factor in this adoption. The chancellor found that both sides had encouraged the relationship and that all children had spent time at both the Beards’ and the Berrymans’ homes.
¶ 32. The Beards contend that, since the initiation of these proceedings, the Berrymans have developed a strained relationship with the minor children’s biological parents. Therefore, the Beards argue that the chancellor erred when she did not find that this factor favored them. The chancellor concluded that, while Eric has estranged himself from the Berrymans, the relationship they and the twins have with C.B. has not altered. Therefore, she found that this factor remained neutral. We agree.
¶ 33. The chancellor made clear findings of fact and conclusions of law for each Albright factor after considering the •witnesses’ testimony and the evidence, including the GAL’s report and recommendation. “All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way she sees fit in determining where the child’s best interest lies.” Blakely v. Blakely, 88 So.3d 798, 803 (¶ 17) (Miss.Ct.App.2012) (citing Johnson v. Gray, 859 So.2d 1006, 1013-14 (¶ 36) (Miss.2003)).
[W]e may not always agree with a chancellor’s decision as to whether the best interests] of a child have been met, especially when we must review that decision by reading volumes of docu *228 ments rather than through personal interaction with the parties before us. However, in custody cases, we are bound by the limits of our standard of review and may reverse only when the decision of the trial court was manifestly wrong [or] clearly erroneous, or an erroneous legal standard was employed.
Love, 74 So.3d at 936 (¶ 35) (internal citations omitted). After a thorough review of the record and the chancellor’s written findings, we find that the chancellor did not abuse her discretion in her analysis of the Albright factors. This issue is without merit.
II. GAL’s Report and Recommendation
¶ 34. The Beards also argue that the chancellor abused her discretion when she failed to follow the report and recommendation of the GAL. The Beards assert that the chancellor’s reasons for declining to follow the GAL’s recommendation are not supported by substantial credible evidence. After a review of the chancellor’s written findings, we find that the chancellor sufficiently provided reasons for not adopting the GAL’s recommendation and that those reasons were supported by substantial evidence.
¶ 35. Our supreme court does not require a chancellor to follow the findings of a GAL. S.N.C. v. J.R.D. Jr., 755 So.2d 1077, 1082 (¶ 17) (Miss.2000). However, “when a chancellor’s ruling is contrary to the recommendation of a statutorily required [GAL], the reasons for not adopting the [GAL]’s recommendation shall be stated by the court in the findings of fact and conclusions of law.” Id. at 1082 (¶ 18). The chancellor disagreed with the GAL on three Albright factors: parenting skills, moral fitness, and stability of the home. The GAL and the chancellor also reached different conclusions when considering the age of the Berrymans.
¶ 36. In support of their argument, the Beards do not cite authority but rather invite this Court to simply reconsider the chancellor’s findings of fact. A failure to cite authority in support of an assignment of error is a procedural bar. Wells, 35 So.3d at 1257 (¶30). Further, “[s]o long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor’s decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor.” May, 107 So.3d at 1055 (¶ 10) (citation omitted).
¶ 37. A review of the chancellor’s order and the record contradicts the Beards’ claim. The chancellor provided explanations for diverting from the GAL’s recommendation, and the explanations are supported by credible evidence provided in the record. We do not find that the chancellor abused her discretion in failing to follow the GAL’s report and recommendation. This issue is without merit. Therefore, we affirm the chancellor’s judgment.
¶ 38. THE JUDGMENT OF THE PRENTISS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., CONCURS IN RESULT ONLY.

. To protect the minor children’s confidentiality, we will refer to them throughout this opinion by their initials.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).